CHARLES A. MURPHY *vs.* HOWARD S. PALMER *et al.*

JULY 16, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of trespass on the case for negligence, which was tried in the superior court to a jury. The jury returned a verdict for the plaintiff, and the trial justice granted defendants' motion for a new trial. Both parties have brought the case here by bills of exceptions. Plaintiff is pressing but one of his exceptions, and the defendants are pressing only three. All other exceptions in each bill are neither briefed nor argued and are, therefore, deemed to be waived.

Plaintiff's cause of action arose out of a collision between an automobile, in which he was a passenger, and a railroad tank car on Allen's avenue, a public highway in the city of Providence in this state, at or near its intersection with Bay street. Allen's avenue runs approximately north and south. There are railroad tracks running north and south over and along the highway somewhat to the east of its center line. About where Bay street intersects it there is a spur track or switch running westerly from the main tracks across the center line and the west lane of traffic on the avenue to industrial or commercial premises on Bay street. On August 1, 1944, at about 2 a.m., the automobile in which plaintiff was riding collided with a railroad tank car which was being pushed over the spur track by a Diesel engine. This switching operation was being performed by a crew consisting of an engineer, a fireman, a conductor, a "head end man", and a flagman, all of whom were employees of the New York, New Haven and Hartford Railroad Company, of which defendants were then the trustees.

At the time of the accident, the automobile was being operated on its right side of Allen's avenue in a southerly direction. The operator testified that he was driving at a speed "of about 18 or 20 miles per hour", and about 2½ feet from the right curb; that he saw the Diesel engine up ahead of him but that he did not see the tank car; that he heard no signal bell; that as the engine got closer he slowed down and then suddenly he hit the tank car, or as he expressed it: "and out of a clear sky, Bing! there it was." He admitted that before he collided with the tank car he did not apply his brake. He further testified that the tank car had no lights but that the engine was lighted. When asked several times in cross-examination how far away the tank car was when he first saw it, he was evasive. He was equally evasive when the trial justice sought to elicit testimony along the same line.

The trial justice, who had the advantage of seeing the operator on the witness stand, stated that his "testimony was

very unsatisfactory. He did not, even on the witness stand, seem to realize the importance of his relation to the case as the operator of the car to whose care was entrusted the safety of the three other persons with him." The plaintiff and the other two passengers also testified, but they contributed little of any value in the way of information as to the cause of the collision. Plaintiff's case in that regard was dependent largely upon the testimony of the operator of the automobile. Taken as a whole, the testimony of all the plaintiff's witnesses apparently did not, to the mind of the trial justice, present a strong case in plaintiff's favor, although the jury concluded otherwise.

Defendants' witnesses on the other hand each gave positive testimony of the events leading up to the collision and were not shaken in cross-examination. The engineer, fireman and "head end man" all testified that, as the engine started to push the tank car over the spur track, the flagman was about 250 to 300 feet down in the middle of the avenue swinging a red lantern to warn oncoming traffic; that the engine carried lights in the front and on the sides; that its headlight was lit and shining over the tank car; that its bell was ringing as it moved over to the spur track; that the "head end man" was on the front of the tank car with a white lantern; and that the conductor, who also had a white lantern, was on the westerly sidewalk on Allen's avenue about opposite the flagman in the avenue.

The flagman testified that he took his position in Allen's avenue about opposite Bay street, or a little north of that street, and that he had a red lantern and a white lantern; that he watched the "head end man" give the signal to the engineer to go ahead on the spur track from the main track, and that as soon as the signal was given he began to wave his red lantern to warn oncoming traffic; that he saw plaintiff's automobile coming at about 40 miles per hour and that the driver paid no attention to his warning signal; that he had to jump to get out of his way; and that the automobile crashed into the tank car. He also testified that from where

he stood both the tank car and the engine were plainly visible on the main track before they started to move over the spur track.

The conductor testified to the same effect, and he further testified that he noticed that the driver of the oncoming automobile seemed to be paying no attention to the flagman's signal and that he, the conductor, then waved his light to attract the driver's attention, but that the automobile speeded past him into the tank car. He estimated the speed of the automobile at 40 to 45 miles per hour. He also testified that from where he stood at the corner of Bay street he could see the tank car and the Diesel engine on the main track before they started to move over the spur track.

Defendants also introduced the deposition of another witness who was standing on the opposite side of Allen's avenue about 100 yards southerly from the place of the collision. His testimony on the whole substantially corroborates the crew as to how the accident happened. As to the exact position of the flagman in Allen's avenue just before the accident, his testimony at one point is not clear and would seem to place the flagman in the easterly traffic lane of the avenue, but if all of his testimony is considered together, it is more consistent with the flagman being in the westerly lane where the defendants' other witnesses place him.

The trial justice, in his rescript granting defendants' motion for a new trial, stated: "The Court has no hesitation in saying that, even allowing for interest and partisanship on each side, the great weight of the credible testimony is in favor of the defendants." Plaintiff complains that in thus passing on the credibility of the testimony the trial justice took into consideration certain testimony concerning indulgence in intoxicating beverages by plaintiff and his witnesses a short time before the accident, and also certain other testimony that one of his witnesses was a divorcee. Plaintiff contends that it was error for the trial justice to consider such testimony in weighing the evidence of the parties. In

support of that contention he cites *Kolb* v. *Union R. R. Co.,* 23 R. I. 72.

The short answer to the above contention is that the *Kolb* case is clearly not in point. There the court was passing upon an exception to the introduction of the objectionable testimony. Here the evidence about which plaintiff complains is in the record and he is not pressing any exception to its admissibility. Since the evidence complained of was in the record, the trial justice had the right to consider it.

Plaintiff further contends that the trial justice substituted his own judgment of the evidence for that of the jury and thus violated the rule laid down in *Wilcox* v. *Rhode Island Co.,* 29 R. I. 292, and further explained and applied in *Humes* v. *Schaller,* 39 R. I. 519. That rule is that where the evidence is "nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon", the trial justice "has no right to disturb the findings of the jury, although his own judgment might incline him the other way." That is to say, where two views of the evidence are both fair and reasonable, the jury's view must prevail. In our opinion the record did not call for the application of that rule but for the other rule, also enunciated in the above-cited cases, that where the trial justice's "judgment tells him that the verdict is wrong, because it fails to respond truly to the real merits of the controversy and to administer substantial justice, and is against the fair preponderance of the evidence, then his duty is to set aside the verdict."

Those two rules are well established but the difficulty comes in determining which is applicable in a given case. Where the trial justice shows his awareness of the rules and indicates which is applicable, his decision will not be disturbed unless it is clearly wrong. *Hovas* v. *Cirigliano,* 70 R. I. 227. In the case at bar we think that the trial justice properly performed his duty in passing on defendants' motion for a new trial, and we find nothing in the evidence

**188**

which would warrant us in holding that his decision thereon was clearly wrong. Plaintiff's exception to such decision is therefore overruled.

■ At the conclusion of the evidence in the superior court, defendants moved for a directed verdict, which was denied. They excepted to that ruling and have briefed and argued that exception here. Viewing all of the evidence favorably to the plaintiff against whom the motion was made, without regard to its weight or the credibility of the witnesses, as we are bound to do in the consideration of such a motion, we are of the opinion that the evidence presented a case for the determination of the jury. The trial justice, therefore, did not err in denying defendants' motion for a directed verdict, and their exception thereto is overruled.

Defendants have briefed two other exceptions, either of which if sustained would result merely in an order for a new trial. Ordinarily in such a situation we would not consider either exception at this time, but since the question raised by one of those exceptions will undoubtedly arise again in the next trial we have decided to answer it now. Such exception is to the ruling of the trial justice granting plaintiff's request that §6, chapter 124, general laws 1938, be read to the jury. That section requires a railroad corporation whose railroad crosses any public highway upon the same level to install upon each side of the crossing a signboard bearing in capital letters at least nine inches in length the words "Railroad Crossing, Stop, Look And Listen"; and the section further provides that the "signboard shall be erected and placed under the direction and with the consent of the division of public utilities."

After reading the statute to the jury, the trial justice instructed them that they could consider it in connection with the absence of such a signboard where the spur track crossed the avenue. He also instructed them, however, that they were to ask themselves: " 'Was the absence the cause of the plaintiff's injury?' If it was, then you are to regard it, but if it was not, you are not to regard it at all."

Defendants contend that the action of the trial justice was erroneous for two reasons: First, that the statute did not apply to a spur track crossing only part of a highway as here; and, second, if it did apply, before the statute could be read to the jury and before the jury could be charged with respect to the effect of the absence of the required signboard on defendants' liability for the collision, it was the duty of the plaintiff to show that the division of public utilities had consented to and directed the erection of such a signboard.

■ If the statute applied, the latter contention is clearly untenable. The statute does not authorize the division to excuse the railroad from compliance therewith in any circumstances. Rather, it requires the railroad to obtain the approval by the division of the manner in which it undertakes to comply with the obligation of the statute. Under such construction of the statute, plaintiff was not obliged to show that the division had expressly directed the defendants to erect the signboard.

Defendants' first contention poses a more difficult question. Admittedly the spur track here involved is not what is commonly considered as a railroad crossing. Such a crossing is one where the railroad's right of way completely crosses the public highway at the same level. However, there can be no question that the spur track here crossed more than half of Allen's avenue. It began at the main tracks east of the center line of the avenue, intersected that line, and continued westerly, completely across the southbound traffic lane, to Bay street. Trains operating over that spur thus presented to southbound vehicular traffic on the avenue a hazard comparable in kind, although probably not equal in degree, to that presented by a railroad completely crossing a highway. Defendants themselves recognized that such hazard was created by this crossing by the manner in which they sought, in the instant case, to warn approaching traffic.

The statute in question was intended to provide a further safeguard to the public against such hazard. Its scope is

to be determined not so much by a strict literal interpretation of the word "crossing" as by the object it was primarily designed to serve. That object is the public safety. We are of the opinion that the potentially hazardous situation created for highway traffic by this spur track crossing as it does the entire southbound traffic lane on Allen's avenue is, under a fair and reasonable construction, a railroad crossing within the meaning of §6, chap. 124, G. L. 1938. Thus the trial justice did not err in calling it to the jury's attention and in charging them as to its effect with reference to defendants' liability. Defendants' exception to such action is, therefore, overruled.

Defendants' other exception to the trial justice's charge need not be considered, as the only effect of sustaining it would be an order for a new trial, and the defendants are already assured of that by virtue of our overruling plaintiff's exception to the trial justice's decision granting their motion for a new trial.

The plaintiff's and defendants' exceptions are overruled, and the case is remitted to the superior court for a new trial.

Moss, J., did not participate in the decision.

*A. Norman LaSalle,* for plaintiff.

*William E. Boyle, William J. Carlos,* for defendants.